Octavia **BELTRAN–TIRADO,**
Petitioner,

v.

**IMMIGRATION AND NATURALIZATION SERVICE,**
Respondent.

No. 98–70783.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 5, 2000.

Filed May 31, 2000

*Vellalos* opinion. *See Bacon,* 82 F.3d at 824 (9th Cir.1996).

Jonathan D. Montag, Jan Joseph Bejar, San Diego, California, for the petitioner.

Nelda C. Reyna, Office of Immigration Litigation, United States Department of Justice, Washington, D.C., for the respondent.

Before: CANBY, NOONAN, and W. FLETCHER, Circuit Judges.

Opinion by Judge CANBY; Dissent by Judge NOONAN.

CANBY, Circuit Judge:

Octavia Beltran–Tirado, a Mexican national and citizen, lived in the United States for nineteen years using the name and Social Security number of a woman whose Social Security card Beltran apparently found on a bus. In 1991, Beltran was arrested and convicted of two crimes because she wrote her false Social Security number on an employment verification form in order to obtain employment. After she served her sentence, the U.S. Immigration and Naturalization Service ("INS") sought to deport her. Beltran then attempted to acquire lawful permanent residence in this country by applying for "registry" under 8 U.S.C. § 1259.[1] The Board of Immigration Appeals denied her request on the ground that her use of a false Social Security number constituted crimes of "moral turpitude," and that Beltran was therefore statutorily ineligible for registry. The Board also denied registry as a matter of discretion. We reverse. Beltran's crimes did not establish "moral turpitude" within the meaning of the Immigration and Nationality Act. Moreover, the Board's legal error in applying the

---

1. Beltran also sought other relief that we lack jurisdiction to address for reasons to be explained.

statute infected its exercise of discretion; we therefore reverse and remand to the Board for a new exercise of discretion.

## FACTUAL BACKGROUND

Beltran–Tirado is fifty years old and has lived in the United States since arriving here at age eighteen in 1968.[2] For nineteen of her thirty-two years here, 1972–1991, Beltran lived under the assumed identity of Mary Lou Slavit. The real Mary Lou Slavit, who testified in this proceeding under her married name of Wingbermuehle, lives in Missouri. Beltran testified that she found Wingbermuehle's Social Security card on a bus. Beginning in 1972, Beltran used Wingbermuehle's Social Security card to obtain employment, get married twice, and obtain a driver's license, credit cards, and a HUD loan. She did not attempt to create any liability for Wingbermuehle in any of these transactions; Beltran used the card to establish her own credit.

Beltran's earnings, however, caused the Internal Revenue Service to question Wingbermuehle about unreported income. In 1988, Wingbermuehle called Beltran at Beltran's place of work and asked her to stop identifying herself as Wingbermuehle. Beltran persisted. In April 1991, Beltran was arrested and subsequently convicted of using a false attestation on an employment verification form in violation of 18 U.S.C. § 1546(b)(3) and of falsely representing a Social Security number in violation of 42 U.S.C. § 408(g)(2) (1988) (recodified at 42 U.S.C. § 408(a)(7)(B)). These two convictions were predicated on a single set of facts—Beltran's false attestation on an employment verification form for the purpose of obtaining employment at a restaurant in California. Beltran was sentenced to ninety days imprisonment, ninety days in a halfway house, and five years probation.

After the INS moved to deport her in 1993, Beltran sought relief by applying for registry, suspension of deportation, and voluntary departure. *See* Immigration and Nationality Act ("INA"), §§ 249, 244(a), 244(e), 8 U.S.C. §§ 1259, 1254(a), 1254(e) (1994). The immigration judge denied all three requests. The Board conducted a de novo review of Beltran's case and similarly denied Beltran relief with respect to all three applications. For each application, the Board not only found that Beltran did not meet the statutory requirements for relief, but it also denied relief as a matter of discretion. Beltran now seeks review of all three denials of relief.

## JURISDICTION

Beltran's petition is subject to the transitional rules of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA").[3] For that reason, we are precluded entirely from granting relief on two of Beltran's three claims. Section 309(c)(4)(E) of the transitional rules deprives us of jurisdiction to review the Board's discretionary denial of Beltran's applications for suspension of deportation and voluntary departure. *See Kalaw v. INS*, 133 F.3d 1147, 1152 (9th Cir.1997). Beltran contends that this provision violates her due process rights, but we have previously rejected this argument, and do so here. *See Antonio–Cruz v. INS*, 147 F.3d 1129, 1131 (9th Cir.1998). Because the Board's denial of suspension of deportation and its denial of voluntary departure are supported by the Board's exercise of discretion, we lack jurisdiction to review those rulings. *See Kalaw*, 133 F.3d at 1152; *Antonio–Cruz*, 147 F.3d at 1130.

IIRIRA does not, however, deprive us of jurisdiction to review the denial, discretionary or otherwise, of Beltran's application for registry.[4] We have jurisdiction

---

**2.** There is conflicting evidence in the record concerning whether Beltran's presence in the United States has been continuous since 1968 or 1970.

**3.** Pub.L. No. 104–208, §§ 309(a), 309(c)(1) & (4), 110 Stat. 3009–546, 3009–625 to –627 (1996), *amended by* Pub.L. No. 104–302, 110 Stat. 3656 (Oct. 11, 1996).

**4.** Section 309(c)(4)(E) of the transitional rules

for that purpose under 8 U.S.C. § 1105a (1994) and § 309(c) of the transitional rules. We proceed, therefore, to address Beltran's registry claim.

## APPLICATION FOR REGISTRY

### 1. *Statutory eligibility*

■ The registry statute, 8 U.S.C. § 1259, is a "remedial provision designed to regularize the status of long-resident aliens illegally in the country." *Mrvica v. Esperdy*, 376 U.S. 560, 569, 84 S.Ct. 833, 11 L.Ed.2d 911 (1964) (Goldberg, J., dissenting); *see also Rodriguez–Barajas v. INS*, 992 F.2d 94, 97 (7th Cir.1993). Congress originally enacted the registry statute in 1929 and has updated it periodically since. It now applies to an alien who (1) "entered the United States prior to January 1, 1972," (2) has resided in the United States continuously since that time, (3) is a person of "good moral character," and (4) is not ineligible for citizenship. 8 U.S.C. § 1259.[5] The Board concluded that Beltran foundered on the third element: because her two convictions represented crimes of "moral turpitude" under 8 U.S.C. § 1182(a)(2)(A), she could not demonstrate "good moral character" as that term is defined in 8 U.S.C. § 1101(f)(3).

■ The central question before us is whether Beltran's convictions under 18 U.S.C. § 1546(b)(3) (making false attestation on an employment verification form) and what is now 42 U.S.C. § 408(a)(7)(B) (1988) (using false Social Security number) constitute crimes of "moral turpitude" within the meaning of 8 U.S.C. § 1182(a)(2)(A). The text of the statute and federal decisional law provide no clear answer to this question. Congress spoke to this issue, however, in 1990 when it amended 42 U.S.C. § 408, one of the two sections under which Beltran was convicted. The amendment added a new subsection 408(d), which provided that aliens who had been granted permanent resident status under the amnesty or registry statutes were exempted from prosecution for certain past use of false Social Security numbers.[6] The amendment does not apply in terms to Beltran, but its rationale illuminates the view of Congress concerning the lack of moral turpitude involved in Beltran's actions. In explaining the purpose of the exemption from prosecution, Congress's conference committee report states:

> The Conferees intend that this exemption apply only to those individuals who use a false social security number to engage in otherwise lawful conduct. For example, an alien who used a false social security number in order to obtain employment which results in eligibility for social security benefits or the receipt of wage credits would be considered exempt from prosecution. . . .
>
> . . . The Conferees believe that individuals who are provided exemption from prosecution under this proposal should not be considered to have exhibited moral turpitude with respect to the exempted acts for purposes of determinations made by the Immigration and Naturalization Service.

H.R. Conf. Rep. No. 101–964, at 948 (1990), *reprinted in* 1990 U.S.C.C.A.N. 2374, 2653 ("Conference Report"). These principles are relevant to Beltran's case. The crime of use of a false social security

---

denies us jurisdiction over the Board's exercise of discretion pursuant to specifically listed statutes. The registry statute, 8 U.S.C. § 1259, is not among them.

5. Section 1259 also renders ineligible for registry aliens who are "inadmissible under section 1182(a)(3)(E) of this title or under section 1182(a) of this title insofar as it relates to criminals, procurers and other immoral persons, subversives, violators of the narcotic laws or smugglers of aliens."

6. Section 408(d)(1) grants immunity from certain prosecutions to aliens who achieve permanent resident status under: 8 U.S.C. §§ 1160 or 1255a; § 902 of the Foreign Relations Authorization Act, Fiscal Years 1988 and 1989; § 202 of the Immigration Reform and Control Act of 1986; or 8 U.S.C. § 1259 (the registry statute). It also confers immunity on aliens who are granted special immigrant status under 8 U.S.C. § 1101(a)(27)(I). *See* 42 U.S.C. § 408(d)(1).

number, of which Beltran was convicted, is one of the crimes described in 42 U.S.C. § 408(a)(7), for which immunity is granted by § 408(d) to aliens who have been granted amnesty or registry.[7] Specifically, she "used a false social security number in order to obtain employment which results in eligibility for social security benefits or the receipt of wage credits...." Conference Report at 948, 1990 U.S.C.C.A.N. at 2653.

Beltran's crime of false attestation was also addressed by the 1990 amendment to § 408. The exemption from prosecution in § 408(d)(1) applies, with exceptions not relevant here, to "any alleged conduct described in paragraph (6) or (7) of subsection (a)." That conduct includes false use of a Social Security number, which encompasses its use in such a document as an employment verification form. Thus the Conference Committee's comments apply both to the crime of use of a false Social Security number in violation of 42 U.S.C. § 408(a)(7)(B) and to the crime of false attestation with such a number in violation of 18 U.S.C. § 1546(b)(3).[8]

■ Of course, Beltran was not exempted from prosecution under § 408(d). The exemption grants immunity from *future* prosecution for past acts to persons who are granted permanent resident status under specified statutes, including the registry statute, 8 U.S.C. § 1259. Beltran was convicted before she sought registry.[9] But the question before us is not whether Beltran should have been exempt from prosecution, but whether the crimes of which she was convicted involved moral turpitude. Section 408(d), in the light of its legislative history, establishes that use of a false Social Security number to further otherwise legal behavior is not a crime of "moral turpitude" when the user is granted amnesty or registry without first having been convicted for the behavior. The only reasons Beltran would not be immunized by § 408(d) upon being granted registry relief is that her crimes were committed a few weeks too late and she had already been convicted of them. Those deficiencies have nothing to do with the morality of her conduct. Exempt from prosecution or not, the underlying behavior is the same. We conclude that § 408(d) and the accompanying legislative history express Congress's intent that the crimes of which Beltran was convicted do not establish "moral turpitude" with respect to determinations made by the Immigration and Naturalization Service.

■ We find further support for this conclusion in the distinction between *malum prohibitum,* an act only statutorily prohibited, and *malum in se,* an act inherently wrong. As the exemption from prosecution indicates, Beltran's acts are *mala prohibita,* not *mala in se.* As such, they are not generally considered to involve "moral turpitude." *See New Jersey v. T.L.O.,* 469 U.S. 325, 379 n. 21, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985) (Stevens, J., concurring and dissenting) (citing W. La-Fave, *Handbook on Criminal Law* § 6 (1972)). The Board recognizes this same distinction. *See In re Flores,* 17 I. & N. Dec. 225, 227 (BIA 1980) ("[Moral turpitude] has been defined as an act which is

---

**7.** Subsection (d) exempts qualified aliens from prosecution for conduct described in 42 U.S.C. §§ 408(a)(6), 408(a)(7)(A), and 408(a)(7)(B). Beltran was convicted under former 42 U.S.C. § 408(g)(2), now § 408(a)(7)(B).

**8.** Congress was careful to exclude from the exemption those "who used a false social security number for otherwise illegal activity such as bank fraud or drug trafficking...." Conference Report at 948, 1990 U.S.C.C.A.N. at 2653. Also excluded were aliens "who sold social security cards, possessed social security cards with intent to sell, possessed counterfeit social security cards with intent to sell or counterfeited social security cards with intent to sell." *Id.; see* 42 U.S.C. § 408(d)(2). Beltran has done none of these things.

**9.** Section 408(d) also limited the exemption from prosecution to conduct "alleged to have occurred prior to 60 days after November 5, 1990." Beltran was arrested in April 1991, shortly after the period provided in the statute expired. Thus she would not meet the time requirements for exemption.

per se morally reprehensible and intrinsically wrong or malum in se, so it is the nature of the act itself and not the statutory prohibition of it which renders a crime one of moral turpitude.").

■ Although we would normally defer to the Board's interpretation of the Immigration and Nationality Act, we need not do so here because we conclude that the intent of Congress is clear. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *see also Japan Whaling Ass'n v. American Cetacean Soc'y,* 478 U.S. 221, 233, 106 S.Ct. 2860, 92 L.Ed.2d 166 (1986).[10] We therefore conclude that the Board erred in determining that Beltran's convictions establish "moral turpitude" within the meaning of 8 U.S.C. § 1182(a)(2)(A), and in ruling that Beltran was statutorily ineligible for registry on that ground.

■ The Board's alternative exercise of discretion in denying Beltran registry does not insulate its decision from reversal. When a decision of the Board is subject to our review and no statute limits our jurisdiction to review discretionary determinations, we review the Board's exercise of discretion to determine whether that discretion has been abused. *See, e.g., Watkins v. INS,* 63 F.3d 844, 850 (9th Cir.1995). A discretionary decision by the Board is subject to remand if it was reached by including an improper factor, *see Ng v. INS,* 804 F.2d 534, 539 (9th Cir.1986), or if it rests upon a legally erroneous conclusion, *see Ananeh–Firempong v. INS,* 766 F.2d 621, 629 (1st Cir.1985). In weighing the factors leading to its discretionary denial of Beltran's application, the Board cited "respondent's convictions; her unlawful employment; her repeated use of Ms. Wingbermuehle's personal information and identity over a period of

almost 20 years for her own use and benefit; ... the time, effort and expense incurred by the IRS and the Social Security Administration to discover, investigate and cure the problems caused by the respondent...." Although the Board did not expressly mention "moral turpitude" in its exercise of discretion, its reference to Beltran's "convictions" and conduct underlying those convictions leads us to conclude that the Board did rely in some measure on its erroneous conclusion that Beltran's convictions were for crimes of "moral turpitude."

We reach no conclusion as to whether Beltran meets all the statutory requirements for registry, or, if she does, whether she merits a favorable exercise of discretion by the Board. But because we conclude the Board erred in its interpretation of the term "moral turpitude" as it applied to Beltran, and that this error impermissibly infected the Board's discretionary denial of relief, we reverse and remand to the Board for further proceedings.

## DUE PROCESS CLAIM

■ We reject Beltran's claim that she was denied due process when the immigration judge permitted witness Wingbermuehle to testify telephonically at Beltran's deportation hearing. Wingbermuehle was a sworn, out-of-state witness, and her testimony was subject to cross-examination. We have previously upheld the admission of this form of testimony under Federal Rule of Civil Procedure 43(a). *See Alderman v. SEC,* 104 F.3d 285, 288 n. 4 (9th Cir.1997); *see also Official Airline Guides, Inc. v. Churchfield Publications, Inc.,* 756 F.Supp. 1393, 1398–99 n. 2 (D.Or.1990), *aff'd,* 6 F.3d 1385 (9th Cir.1993). We conclude that Wingbermuehle's testimony, therefore,

---

**10.** Thus the Supreme Court has stated:

[I]f a statute is silent or ambiguous with respect to the question at issue, our longstanding practice is to defer to the "executive department's construction of a statutory scheme it is entrusted to administer,"

unless the legislative history of the enactment shows with sufficient clarity that the agency construction is contrary to the will of Congress.

*Japan Whaling,* 478 U.S. at 233, 106 S.Ct. 2860 (citations omitted).

could not have violated INA § 242(b)(3), 8 U.S.C. § 1252(b)(3) (1988) (recodified with amendments at INA § 240(b)(4), 8 U.S.C. § 1229a(b)(4)), which guarantees Beltran a "reasonable opportunity to examine the evidence against [her] ... and to cross-examine witnesses presented by the Government." Beltran relies on *Saidane v. INS*, 129 F.3d 1063, 1065 (9th Cir.1997), but this case is inapposite because Wingbermuehle's testimony was not hearsay. *See Official Airline Guides*, 756 F.Supp. at 1398–99 n. 2 (telephone testimony is taken in "open court").

The question then becomes whether admission of Wingbermuehle's testimony was "fair." *Baliza v. INS*, 709 F.2d 1231, 1233 (9th Cir.1983). Beltran had an adequate opportunity to cross-examine Wingbermuehle. The government had reason to arrange for telephonic testimony because Wingbermuehle lived in Missouri and the hearing was in San Diego. Although the telephone presentation cost Beltran the opportunity to have the witness's demeanor more fully observed by the finder of fact, the testimony would have been admissible in a civil court proceeding under Federal Rule of Civil Procedure 43(a). We conclude that admission of the testimony was "fair," and we accordingly reject Beltran's due process claim.

## CONCLUSION

We have no jurisdiction to review the Board's discretionary denial of Beltran's applications for suspension of deportation and for voluntary departure. We dismiss the petition for review with regard to those claims. We have jurisdiction to review the denial of Beltran's application for registry and we grant the petition for review with regard to that claim. We reject Beltran's due process claim based on the telephonic testimony of Wingbermuehle and affirm the Board's ruling permitting that testimony. We conclude that the Board erred, however, in determining that Beltran's convictions under 42 U.S.C. § 408(g)(2) (1988) and 18 U.S.C. § 1546(b)(3) established "moral turpitude"

and rendered her statutorily ineligible for registry; we therefore reverse that ruling. The Board abused its discretion by relying in part on this error of law when it exercised its discretion to deny Beltran's application for registry under 8 U.S.C. § 1259. We therefore reverse that denial and remand for a new exercise of discretion.

**PETITION FOR REVIEW DISMISSED IN PART AND GRANTED IN PART; DECISION OF BOARD AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

NOONAN, *Circuit Judge,* dissenting:

The court reaches very far to perform a kindly deed. It reads a meaning into two statutes that Congress has not inscribed there, and it goes on to attribute to the Board a motive that the Board does not articulate. Beltran needed a social security number to live in the United States. But when she caused tax trouble for the number's owner and was asked to stop, she did not. Not to mention that the Board's interpretation of a statutory term should control, it was not an unreasonable exercise of discretion for the Board to deny her relief.