**Rogelio RAMIREZ, Petitioner**

v.

**John ASHCROFT, United States Attorney General, et al., Respondents.**

**No. CIV.A. H–04–2078.**

United States District Court, S.D. Texas, Houston Division.

Feb. 24, 2005.

Richard Lloyd Prinz, Attorney at Law, Houston, TX, for Rogelio Ramirez, Petitioner.

Dara Beth Less, Department of Justice, Houston, TX, for John Ashcroft United States Attorney General, District Director Citizenship and Immigration Services Department of Homeland Security, Respondents.

## MEMORANDUM AND OPINION

ROSENTHAL, District Judge.

Petitioner, Rogelio Ramirez, is a citizen of Mexico who has lived in this country for

most of his life. In 1992, he pleaded guilty to a charge of unauthorized use of a motor vehicle and received deferred adjudication probation. In 1996, Ramirez was charged with burglary of a vehicle. As a result of the probation violation, he was convicted on the unauthorized use of a motor vehicle charge and received a two-year prison sentence. In 2001, Ramirez was ordered deported. The Immigration Judge found that Ramirez was not eligible for relief from deportation under former section 212(c) of the Immigration and Nationality Act, 66 Stat. 182, 8 U.S.C. § 1182(c) (1994 ed.). The Immigration Judge found that Ramirez had been convicted of a crime of violence, as defined in 18 U.S.C. § 16; the crime did not involve moral turpitude; and no ground of exclusion existed parallel to the ground on which he was removable. Ramirez appealed the removal order to the Board of Immigration Appeals. Ramirez argued that unauthorized use of a motor vehicle was not a crime of violence, and alternatively, that it was a crime of violence involving moral turpitude, making him eligible for relief under former section 212(c) of the INA. The BIA affirmed the Immigration Judge's decision. Ramirez appealed the BIA's decision to the Fifth Circuit, which dismissed for lack of jurisdiction. Ramirez then filed this petition for a writ of habeas corpus.

The government has moved to dismiss or for summary judgment. The government asserts that Ramirez named an incorrect respondent and that each ground that the BIA relied on to deny relief from removal was correct. Ramirez has filed a cross-motion for summary judgment, heavily relying on a recent Supreme Court decision, *Leocal v. Ashcroft*, —— U.S. ——, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004), to support his argument that the unauthorized use of a motor vehicle conviction was not an aggravated felony conviction. Ramirez asserts that after *Leocal*, the Fifth Circuit's holding in *United States v. Gal-*

*van–Rodriguez*, 169 F.3d 217 (5th Cir. 1999), that a conviction under the Texas unauthorized use of a motor vehicle statute is a conviction for an aggravated felony, is no longer good law.

Based on a careful review of the pleadings, the motions and responses, the record, and the applicable law, this courts denies the motion to dismiss, but allows leave to amend to name the proper defendant, grants the government's motion for summary judgment, and denies Ramirez's cross-motion for summary judgment. The reasons are set out below.

## I. The Motion to Dismiss

On August 23, 2004, respondents moved to dismiss Ramirez's petition on the basis that it named the wrong respondent. (Docket Entry No. 5). Ramirez had named former Attorney General Ashcroft and the Department of Homeland Security's District Director for Citizenship and Immigration Services. (Docket Entry No. 1). Respondents argue that under *Rumsfeld v. Padilla*, —— U.S. ——, 124 S.Ct. 2711, 159 L.Ed.2d 513 (2004), the proper respondent is Ramirez's immediate custodian, the Bureau of Immigration and Customs Enforcement Field Office Director. (Docket Entry No. 5, p. 2). By motion dated October 8, 2004, Ramirez sought to add as respondents Tom Ridge, former Director of Homeland Security (DHS) and the director of DHS's Bureau of Immigration and Customs Enforcement. (Docket Entry No. 8).

■ Rule 25 governs substitution of parties and provides that

[w]hen a public officer is a party to an action in his official capacity and during its pendency ... ceases to hold office, the action does not abate and the officer's successor is automatically substituted as a party. Proceedings following the substitution shall be in the name of

the substituted party, but any misnomer not affecting the substantial rights of the parties shall be disregarded. An order of substitution may be entered at any time, but the omission to enter such an order shall not affect the substitution. FED. R. CIV. P. 25(d)(1). Rule 25 also states that public officers sued in an official capacity "may be described as a party by the officer's official title rather than by name." FED. R. CIV. P. 25(d)(2). This court grants the agreed motion to add the proper governmental respondents and denies the government's motion to dismiss.

## II. The Cross–Motions for Summary Judgment

 The Fifth Circuit has adopted a two-part test for reviewing agency decisions interpreting federal immigration laws, including the statutory classification of certain criminal offenses. First, a reviewing court must accord "substantial deference" to the BIA's interpretation of the statutes and regulations it administers. *Alwan v. Ashcroft,* 388 F.3d 507, 510 (5th Cir.2004). Such interpretations must be upheld if they are reasonable. *Iredia v. INS,* 981 F.2d 847, 848 (5th Cir.1993). Whether the particular elements of a state or federal crime meet the BIA's definition of an aggravated felony or a crime involving moral turpitude is reviewed *de novo. Smalley v. Ashcroft,* 354 F.3d 332, 336 (5th Cir.2003) (noting that the two-step approach provides both consistency in the interpretation of federal immigration laws and a proper regard for the BIA's administrative role); *see also Omagah v. Ashcroft,* 288 F.3d 254, 258 (5th Cir.2002) ("Determining a particular federal or state crime's elements lies beyond the scope of

the BIA's delegated power or accumulated expertise."). This court defers to the BIA's interpretation of a statutory term, but whether a particular conviction qualifies as an aggravated felony or a crime involving moral turpitude is reviewed *de novo. Smalley,* 354 F.3d at 335–36.

### A. A Crime of Violence [1]

In *United States v. Galvan–Rodriguez,* the Fifth Circuit held that the Texas crime of unauthorized use of a motor vehicle was a *per se* crime of violence under 18 U.S.C. § 16(b). In *Galvan–Rodriguez,* the defendant was convicted of illegal reentry into the United States and received a sixteen-level enhancement based on his prior Texas conviction for UUMV. 169 F.3d at 218. The enhancement was imposed under U.S.S.G. section 2L1.2, under which a defendant who has been removed and unlawfully reenters the country will receive an increased offense level if he has previously been convicted of an "aggravated felony." *See id.* Section 2L1.2 defined aggravated felony as any "crime of violence" under 8 U.S.C. 1101(a)(43). *See* U.S. SENTENCING GUIDELINES MANUAL § 2L1.2, cmt. n. 7 (1995). Section 1101(a)(43)(F) defines "aggravated felony" as "a crime of violence (as defined in section 16 of Title 18, United States Code, but not including a purely political offense) for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(F); *see* 18 U.S.C. § 16(a)-(b).

Section 16(a) defines a "crime of violence" as "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another." Section

---

1. The government urges that this court cannot decide this question because Ramirez failed to raise it before the Fifth Circuit in his petition for review. Under 8 U.S.C. § 1252(d), this court may consider grounds that could not have been presented earlier.

Ramirez could not have raised the Supreme Court's decision in *Leocal v. Ashcroft,* — U.S. ——, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004) before the Fifth Circuit. This court examines Ramirez's claims on the merits.

16(b) defines a "crime of violence" as a felony offense "that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 16(b) (2005). The Fifth Circuit held that UUMV is a crime of violence as defined by section 16 and an aggravated felony for purposes of the section 2L1.2(b)(2) offense level enhancement. The Fifth Circuit stated:

> Concluding that the risks of physical force being exerted during the commission of the burglary of a vehicle are substantially similar to the risks of such force occurring while operating a vehicle without the owner's consent, we hold that the offense of unauthorized use of motor vehicle is a crime of violence within the intendment of 18 U.S.C. § 16.

169 F.3d at 219. The government argues that *Galvan–Rodriguez* is binding on this court and forecloses Ramirez's argument that he could not be removed because he was not convicted of an aggravated felony.

Ramirez argues that the Supreme Court's decision in *Leocal v. Ashcroft* undercuts the binding effect of *Galvan–Rodriguez*. In *Leocal,* the petitioner, a lawful permanent resident of the United States, was convicted of two counts of driving under the influence of alcohol and causing injury to another in violation of Florida law. While serving his prison sentence, the Immigration and Naturalization Service initiated removal proceedings against him. The Supreme Court held that a DUI conviction under Florida law did not meet the definition of an aggravated felony under section 16.

The Supreme Court first analyzed the presence of a substantial risk that physical force would be used to commit the offense, distinguishing the risk that such force could result from the commission of the offense:

> [Section] 16(b) does not ... encompass all negligent misconduct, such as the negligent operation of a vehicle. It simply covers offenses that naturally involve a person acting in disregard of the risk that physical force might be used against another in committing an offense. The reckless disregard in § 16 relates not to the general conduct or to the possibility that harm will result from a person's conduct, but to the risk that the use of physical force against another might be required in committing a crime. The classic example is burglary. A burglary would be covered under § 16(b) not because the offense can be committed in a generally reckless way or because someone may be injured, but because burglary, by its nature, involves a substantial risk that the burglar will use force against a victim in completing the crime.

*Leocal,* ⸺ U.S. at ⸺, 125 S.Ct. at 383. The Court explained that

> [w]hile driving under the influence created a risk of injury to others, it could not be characterized as a "crime of violence" because any such risk was not a natural outcome of an illegal use of force. Section 16(b) plainly does not encompass all offenses which create a "substantial risk" that injury will result from a person's conduct. The "substantial risk" in § 16(b) relates to the use of force, not to the possible effect of a person's conduct.... The risk that an accident may occur when an individual drives while intoxicated is simply not the same thing as the risk that the individual may "use" physical force against another in committing the DUI offense.

*Id* at 383 n. 7. The proper meaning of "crime of violence" identified a class of violent, active crimes and not DUI. *Id.*

The Court in *Leocal* also clarified the intent required for a crime of violence

under section 16. In holding that section 16 requires more than negligent conduct, the Court reasoned that "[t]he key phrase in § 16(a)—the 'use ... of physical force against the person or property of another'—most naturally suggests a higher degree of intent than negligent or merely accidental conduct." *Id.* at 382. Similarly, the Court held that "we must give the language in § 16(b) an identical construction, requiring a higher *mens rea* than the merely accidental or negligent conduct involved in a DUI offense." *Id.* at 383. The Court concluded that "[i]nterpreting § 16 to encompass accidental or negligent conduct would blur the distinction between the 'violent' crimes Congress sought to distinguish for heightened punishment and other crimes." *Id.*

The first aspect of *Leocal* requires a court to ask whether the offense—in this case, unauthorized use of a motor vehicle—categorically presents a substantial risk of the use of force against another person or against property in the commission of the offense. Although an offense may involve conduct that creates a heightened risk of injury or violence, that is insufficient; the offense must "naturally involve a person acting in disregard of the risk that physical force might be used against another in committing an offense." *See id.* at 383. It must be an active crime, like burglary, which necessarily creates a substantial risk of violence and may be properly characterized, categorically, as a "crime of violence." *See United States v. Johnson,* 399 F.3d 1297, 2004 WL 3185295, at *3 (11th Cir.2005) (holding that the offense of felon in possession of a firearm is not a crime of violence under section 16(b)).

■ The Fifth Circuit has limited the holding of *Galvan–Rodriguez* to its property aspects and to section 16(b) cases. *United States v. Charles,* 301 F.3d 309, 314 (5th Cir.2002) (en banc); *United States v.*

*Lee,* 310 F.3d 787, 790 (5th Cir.2002). The court in *Galvan–Rodriguez* noted that an unauthorized use of a motor vehicle offense involves several substantial risks of the use physical force during the commission of the offense. The court first stated that UUMV creates a substantial risk that someone using a vehicle without the owner's authorization might do so recklessly, causing an accident that could result in damage to the vehicle or other property. Such a risk of negligence or recklessness does not result from the commission of the offense and does not make unauthorized use of a motor vehicle a crime of violence under *Leocal,* —— U.S. at ——, 125 S.Ct. at 383. The court in *Galvan–Rodriguez* also cited a "strong probability" of the use of physical force should an "inexperienced or untrustworthy driver who has no pride of ownership ... expose the car to stripping or vandalism." 169 F.3d at 219. Insofar as these are risks of negligence or recklessness resulting from the commission of the UUMV offense, under *Leocal,* they do not make unauthorized use of a motor vehicle a "crime of violence" under 18 U.S.C. 16(b). *See Leocal,* —— U.S. at —— n. 7, 125 S.Ct. at 383 n. 7 ("The 'substantial risk' in section 16(b) relates to the use of force, not to the possible effect of a person's conduct."). The appropriate consideration is the "risk that the use of physical force ... might be required in committing a crime." *Id.* at 383. Vandalizing a vehicle in order to obtain unauthorized access to it, rather than exposing the vehicle to vandalism or stripping by leaving the vehicle somewhere after a joyride, does create a substantial risk of the use of physical force against property in order to commit the offense, which, under *Leocal,* is appropriately considered.

The *Galvan–Rodriguez* court also noted an additional "strong probability" of physical force should an unauthorized driver attempt "to evade the authorities by pre-

cipitating a high-speed car chase and thereby risk[ ] the lives of others, not to mention significant damage to the vehicle and other property." 169 F.3d at 220. Like the risks from driving recklessly or exposing the vehicle to stripping and vandalism, the potential that an unauthorized driver may risk the use of force in fleeing police is a "possible effect of a person's conduct." *Leocal* clarifies that this is not the kind of substantial risk that determines whether a felony is a crime of violence under section 16(b).

The court in *Galvan–Rodriguez* found that the offense of unauthorized use of a vehicle, like burglary, carries a substantial risk that the vehicle would be broken into or vandalized in the commission of the offense. An unauthorized driver is likely to use physical force to gain access to a vehicle and to drive it. This is a sufficient risk of the use of physical force in the course of committing the offense to find, after *Leocal*, that unauthorized use of a motor vehicle is a "crime of violence" under section 16(b).[2] "[I]t cannot be doubted that there is a substantial risk that physical force will be used against a vehicle in order to obtain the unauthorized access to it...." *United States v. Chapa–Garza*, 243 F.3d 921, 927 (5th Cir.2001). A substantial risk of the application of physical force against property in the commission of the offense is sufficient under *Leocal*.

The decisions of the Fifth Circuit reflect disquiet and disagreement within the court as to whether such an expansive reading to "crime of violence" is appropriate. *See, e.g., United States v. Calderon–Pena*, 383 F.3d 254, 262 (5th Cir.2004) (en banc) (prior conviction for child endangerment is not

"crime of violence"); *United States v. Vargas–Duran*, 356 F.3d 598, 600 (5th Cir. 2004) (en banc) (prior conviction for intoxication assault does not qualify as "crime of violence" for sentence enhancement purposes); *United States v. Medina–Anicacio*, 325 F.3d 638, 644 (5th Cir.2003) (divided panel decision holding that a violation of California's possession of a deadly weapon law is not an aggravated felony for sentencing purposes); *see also United States v. Chapa–Garza*, 262 F.3d 479, 480 (5th Cir.2001) (Barksdale, J., dissenting) (stating Texas felony DWI is a crime of violence under 18 U.S.C. § 16(b) and dissenting from denial of en banc hearing). It would be helpful to have that reading reexamined by the appellate court in light of *Leocal*. As limited by the Fifth Circuit in *United States v. Charles*, however, *Galvan–Rodriguez* appears to remain good law after *Leocal* and as such is binding on this court.

The second aspect of *Leocal* requires the court to examine whether the statutory definition of the offense encompasses negligence. *See United States v. Trinidad–Aquino*, 259 F.3d 1140, 1145 (9th Cir.2001) ("[W]e hold that the presence of the volitional 'use ... against' requirement in both prongs of 18 U.S.C. § 16 means that a defendant cannot commit a 'crime of violence' if he negligently—rather than intentionally or recklessly—hits someone or something...."). In *Trinidad–Aquino*, the court held that because California's driving under the influence statute, California Vehicle Code § 23153, can be violated through mere negligence, a violation of the statute was not a crime of violence under section 16. *Id.* at 1146; *see Penul-*

---

**2.** This risk of physical force is typically not present in those UUMV cases where a driver exceeds the scope of a vehicle owner's authorization and does not use force to gain access to and use the vehicle. *See, e.g., Dodson v. State,* 800 S.W.2d 592, 593–594 (Tex.App.—

Houston [14th Dist] 1990, writ ref.); *Bradford v. State,* 2003 WL 21501968, at *2 (Tex.App.— Amarillo July 1, 2003). Section 16(b), however, applies to an offense that "by its nature" involves such risks. UUMV is such an offense.

*iar v. Ashcroft,* 395 F.3d 1037, 1041 (9th Cir.2005) (finding this interpretation consistent with the later decision in *Leocal*). The Texas unauthorized use of a motor vehicle statute requires a defendant "intentionally or knowingly" to operate a vehicle without the owner's consent; negligence or recklessness is not sufficient. As the Fifth Circuit stated in the part of *Galvan–Rodriguez* that remains valid after *United States v. Charles,* unauthorized use of a motor vehicle carries a substantial risk of damage or destruction to the vehicle in the commission of the offense, by breaking into the vehicle, stripping the vehicle, or vandalizing the vehicle in order to use it without the owner's consent. 169 F.3d at 219.

Ramirez's motion for summary judgment on the basis that he was not convicted of a crime of violence is denied.

## B. A Crime Involving Moral Turpitude

Ramirez argues that if his conviction is treated as an aggravated felony, it should be treated as one involving moral turpitude. Such a classification would allow Ramirez to invoke a basis for relief from removal that has a comparable ground of inadmissibility under 8 U.S.C. § 1182(a)(2)(A)(i)(I). Ramirez makes this argument to avoid the BIA's finding that he was not eligible for discretionary relief under former INA § 212(c) because there was no comparable ground of inadmissibility found in former section 1182(a) that corresponds to a crime of violence. The government responds by citing cases upholding the BIA's position that relief under former section 1182(c) is only available to waive deportation grounds that have comparable grounds of inadmissibility or exclusion. *See, e.g., Rodriguez v. INS,* 9 F.3d 408 (5th Cir.1993); *Chow v. INS,* 12 F.3d 34 (5th Cir.1993); *Matter of Hernandez–Casillas,* 983 F.2d 231 (5th Cir.1993) (unpublished). The government argues

that because unauthorized use of a motor vehicle is not a crime involving moral turpitude, there is no comparable ground of inadmissibility or exclusion that would permit Ramirez to obtain relief from removal under former section 1182(c).

■ The INA " 'does not define the term "moral turpitude" and legislative history does not reveal congressional intent' regarding which crimes are turpitudinous." *Smalley,* 354 F.3d at 335, quoting *Pichardo v. INS,* 104 F.3d 756, 759 (5th Cir.1997). Instead, Congress left the interpretation of this phrase to both the BIA and the federal courts. *Okoro v. INS,* 125 F.3d 920, 926 (5th Cir.1997). A court gives deference to the BIA's definition of the phrase "moral turpitude," *id.,* but reviews *de novo* whether the elements of a state or federal crime fit that definition. *See Omagah,* 288 F.3d at 258; *Okoro,* 125 F.3d at 926. Through its administrative decisions, the BIA has crafted the following definition of moral turpitude:

> Moral turpitude refers generally to conduct that shocks the public conscience as being inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general. Moral turpitude has been defined as an act which is per se morally reprehensible and intrinsically wrong, or malum in se, so it is the nature of the act itself and not the statutory prohibition of it which renders a crime one of moral turpitude. Among the tests to determine if a crime involves moral turpitude is whether the act is accompanied by a vicious motive or a corrupt mind.

*Hamdan v. INS,* 98 F.3d 183, 186 (5th Cir.1996) (quoting the BIA's decision in that case) (internal citations omitted); *see also Omagah,* 288 F.3d at 259–60. The Fifth Circuit categorically applies this definition of moral turpitude to an alien's

crime: "[w]hether a crime involves moral turpitude depends on the inherent nature of the crime, as defined in the statute concerned, rather than the circumstances surrounding the particular transgression." *Okoro*, 125 F.3d at 926. The intent to commit a crime is not the equivalent of the evil intent of a crime involving moral turpitude. *Goldeshtein v. INS*, 8 F.3d 645, 648 (9th Cir.1993) (conviction of willful conduct does not establish evil intent for a crime involving moral turpitude). A crime involves moral turpitude only if all of the conduct it prohibits is turpitudinous. *Hamdan*, 98 F.3d at 187. As a general rule, if a statute encompasses both acts that do and do not involve moral turpitude, the BIA cannot sustain a deportability finding on that statute. *See Matter of Short*, 1989 WL 331878, 20 I. & N. Dec. 136, 139 (BIA 1989).[3]

■ Unauthorized use of a motor vehicle can encompass acts such as using a vehicle in a manner that exceeds the scope of the owner's consent. *See Dodson v. State*, 800 S.W.2d 592, 593–594 (Tex. App.—Houston [14th Dist] 1990, writ ref.); *Bradford v. State*, 2003 WL 21501968, at *2 (Tex.App.—Amarillo July 1, 2003). Although the substantial risk that violence against property may be used in the commission of the offense justifies classifying the offense as an aggravated felony, as that statutory term has been defined in this circuit, the moral turpitude analysis is not based on a substantial likelihood that base, violent, or depraved acts will occur. Rather, if a statute can be violated by both acts that do and do not involve moral turpitude, the crime does not involve moral turpitude for the purpose of the Immigra-

tion Act. *Smalley*, 354 F.3d at 336; *Hamdan*, 98 F.3d at 187.

■ A review of the cases reveals that the offenses found to involve moral turpitude are of different quality and magnitude than unauthorized use of a motor vehicle. In *Pichardo*, the Fifth Circuit ruled that a conviction for involuntary deviate sexual intercourse, indecent assault, endangering the welfare of children, corruption of minors, and incest were "unquestionably" crimes involving moral turpitude. *Id.* at 759. In *Omagah*, 288 F.3d at 259–60, the court held that conspiring to obtain, possess, and use illegal immigration documents involves fraud and is a crime of moral turpitude. Similarly, courts have held that aggravated assault is a crime involving moral turpitude. *See Pichardo*, 104 F.3d at 760; *but see Zaitona v. INS*, 9 F.3d 432, 433 (6th Cir.1993) (aggravated assault is not crime of moral turpitude, but felonious assault, larceny, and making false statements to obtain a driver's license are); *see also Hamdan*, 98 F.3d at 189 (Louisiana kidnapping statute that encompassed conduct that did not involve moral turpitude could not be ground for deportation); *Nguyen v. Reno*, 211 F.3d 692, 694 (1st Cir.2000) (assault in the second degree considered crime of moral turpitude); *Grageda v. INS*, 12 F.3d 919, 922 (9th Cir.1993) (spousal abuse considered a crime of moral turpitude); *Goldeshtein*, 8 F.3d at 647 (structuring financial transactions to avoid currency reporting requirements is not a crime of moral turpitude); *United States v. Ekpin*, 214 F.Supp.2d 707, (S.D.Tex.2002) (parent's aggravated sexual assault of child "unquestionably" a crime of moral turpitude); *Is-*

---

**3.** An exception to this general rule is made if the statute is divisible into discrete subsections of acts that are and those that are not crimes involving moral turpitude. In that situation, a court looks at the alien's record of conviction to determine whether he "has been convicted of a subsection" that qualifies as a crime involving moral turpitude. *Id.; see also Omagah*, 288 F.3d at 260.

*lam v. Harrington*, 2001 WL 1335851, at *7 (N.D.Tex. Oct. 23, 2001) (assaulting spouse considered crime of moral turpitude). The Eleventh Circuit has held that a misprision offense "is a crime of moral turpitude because it necessarily involves an affirmative act of concealment or participation in a felony, behavior that runs contrary to accepted societal duties and involves dishonest or fraudulent activity." *Itani v. Ashcroft*, 298 F.3d 1213, 1216 (11th Cir.2002). Threatening a crime of violence against another person with the purpose of causing extreme fear falls within the category of offenses requiring a vicious motive or evil intent. *Chanmouny v. Ashcroft*, 376 F.3d 810, 814–15 (8th Cir.2004) (holding that the intent to terrorize distinguishes the terroristic threat offense from simple assault, which is not a crime of moral turpitude; simple assault typically is a general intent crime and is different in character from those offenses that involve "a vicious motive, corrupt mind, or evil intent"); *Rodriguez–Herrera v. INS*, 52 F.3d 238, 241 (9th Cir.1995) (crime of "malicious mischief" under Washington law, which could lead to conviction for destroying as little as $250 of another's property with an "evil wish to annoy," involved an evil intent that was too attenuated from the character of the offense to establish a crime of moral turpitude). Unauthorized use of a motor vehicle does not fit into the types of offenses that courts have found to involve moral turpitude.

### III. Conclusion

This court concludes that Ramirez has failed to show a basis for the relief he seeks. This case will be dismissed by separate order.