IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 25, 2007

Charles R. Fulbruge III
Clerk

No. 06-60644

KASHIF HYDER

Petitioner

v.

PETER D KEISLER, ACTING U S ATTORNEY GENERAL

Respondent

Petition for Review of an Order of the
Board of Immigration Appeals

Before REAVLEY, BARKSDALE, and PRADO, Circuit Judges.

PRADO, Circuit Judge:

Kashif Hyder ("Hyder"), a native and citizen of Pakistan, petitions this court for review of a decision of the Board of Immigration Appeals (BIA) affirming the immigration judge's denial of his application for cancellation of removal from the United States. Hyder pleaded guilty in 2003 to misusing a social security number obtained by fraud, in violation of 42 U.S.C. § 408(a)(7)(A) (2000). The immigration judge held that this offense was a crime involving moral turpitude ("CIMT"), thus rendering Hyder ineligible for a grant of cancellation of removal; the BIA affirmed. For the following reasons, we deny Hyder's petition for review.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Hyder entered the United States on June 13, 1985 as a nonimmigrant visitor with permission to remain until December 12, 1985. However, he remained in the United States beyond the authorized period. On September 24, 1999, when Hyder was seventeen years old, a family member acting with Hyder's knowledge signed and dated a social security application in Hyder's name. The application, which falsely stated that Hyder held a student visa that gave him lawful immigration status, led to the issuance of a social security card. On August 7, 2000, at the age of eighteen, Hyder used this social security card to obtain a Texas driver's license and Texas identification card.[1] Hyder claims that he was unaware that the social security card was fraudulent when these events occurred.

In September 2002, Hyder was indicted by the United States District Court for the Western District of Texas on one count of making a false claim to United States citizenship, see 18 U.S.C. § 911, and one count of misusing a social security number obtained by fraud, see 42 U.S.C. § 408(a)(7)(A). Pursuant to a plea agreement entered in June 2003, the false claim of citizenship count was dismissed, and Hyder was convicted of misuse of a social security number obtained by fraud. Hyder was sentenced to twelve months' probation.

In 2003 and 2004, the Department of Homeland Security ("DHS") charged Hyder with being subject to removal from the United States on several grounds, including two that Hyder conceded: (1) that he remained in the United States beyond the expiration of his authorized period of stay, see 8 U.S.C. § 1227(a)(1)(B); and (2) that, by obtaining employment for wages without authorization, he failed to maintain his status as nonimmigrant visitor, see 8

---

[1] These facts are as stipulated in the plea agreement in which Hyder pleaded guilty to a violation of 42 U.S.C. § 408(a)(7)(A).

U.S.C. § 1227(a)(1)(C)(i).[2]  Although he conceded that he was removable, Hyder applied for cancellation of removal pursuant to 8 U.S.C. § 1229b(b)(1), which provides that the Attorney General has discretion to cancel the removal of deportable aliens who satisfy several conditions of eligibility.  The immigration judge found that Hyder's conviction under 42 U.S.C. § 408(a)(7)(A) was a CIMT, rendering Hyder per se unable to satisfy the condition of "good moral character," as required by 8 U.S.C. § 1229b(b)(1)(B).  Accordingly, on March 4, 2005, the immigration judge denied Hyder's application for cancellation of removal.

Hyder appealed the immigration judge's decision to the BIA.  The BIA affirmed the immigration judge's conclusion that Hyder was ineligible for cancellation of removal, finding that a violation of § 408(a)(7)(A) was a CIMT that rendered him unable to satisfy the "good moral character" requirement.  In addition, the BIA found that Hyder's conviction for a CIMT rendered him unable to meet a separate condition of eligibility—the requirement that the alien has not been convicted of offenses under certain statutory sections, one of which describes CIMTs.  See 8 U.S.C. §§ 1229b(b)(1)(C) & 1182(a)(2)(A)(i)(I).  Hyder petitions this court for review of the decision of the BIA, arguing that his conviction did not constitute a CIMT.

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(2)(D) to review the question of law at issue in this case: whether the BIA properly classified the crime of misuse of a social security number under 42 U.S.C. § 408(a)(7)(A) as a CIMT.  See Rodriguez-Castro v. Gonzales, 427 F.3d 316, 319 (5th Cir. 2005).  To review the BIA's finding that an alien has committed a CIMT, we use a two-part standard: "First, we accord 'substantial deference to the BIA's interpretation of

---

[2] DHS also charged Hyder with being removable pursuant to 8 U.S.C. § 1227(a)(3)(D) for falsely claiming to be a citizen of the United States, but the immigration judge held that he was not removable on that ground, and the BIA affirmed that ruling.  That ruling is not relevant to this appeal.

the [Immigration and Nationality Act]'and its definition of the phrase 'moral turpitude.' Second, we review de novo whether the elements of a state or federal crime fit the BIA's definition of a CIMT." Smalley v. Ashcroft, 354 F.3d 332, 335-36 (5th Cir. 2003) (internal citations omitted).

## III. DISCUSSION

## A. Statutory eligibility for cancellation of removal

The statute governing applications for cancellation of removal provides,

> The Attorney General may cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence, an alien who is inadmissible or deportable from the United States if the alien—
> (A) has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application;
> (B) has been a person of good moral character during such period;
> (C) has not been convicted of an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(3) of this title, subject to paragraph (5); and
> (D) establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

8 U.S.C. § 1229b(b)(1). The government concedes that Hyder satisfies conditions (A) and (D). The BIA found that Hyder did not meet condition (B) because a CIMT conviction establishes per se an absence of good moral character, see Omagah v. Ashcroft, 288 F.3d 254, 259 (5th Cir. 2002), and that he did not meet condition (C) because § 1182(a)(2) specifically covers CIMTs. Therefore, the sole issue before us is whether Hyder's conviction for misuse of a social security number under 42 U.S.C. § 408(a)(7)(A) is a CIMT. Section 408(a)(7) provides that a person commits a felony who

> for the purpose of obtaining anything of value from any person, or for any other purpose—
> (A) willfully, knowingly, and with intent to deceive, uses a social security number, assigned by the Commissioner of Social Security

> . . . on the basis of false information furnished to the Commissioner
> of Social Security by him or by any other person . . . .

We have not previously considered whether, for immigration or other purposes, this offense is a CIMT.

## B.  The meaning of "moral turpitude"

"Moral turpitude" is not defined by the Immigration and Nationality Act. We have adopted the BIA's definition:

> Moral turpitude refers generally to conduct that shocks the public conscience as being inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general.  Moral turpitude has been defined as an act which is per se morally reprehensible and intrinsically wrong, or malum in se, so it is the nature of the act itself and not the statutory prohibition of it which renders a crime one of moral turpitude.  Among the tests to determine if a crime involves moral turpitude is whether the act is accompanied by a vicious motive or a corrupt mind.

Hamdan v. I.N.S., 98 F.3d 183, 186 (5th Cir. 1996) (quoting the BIA's decision in that case) (internal citations omitted).  Fifth Circuit case law sheds further light on the meaning of the term.  We have repeatedly emphasized that crimes whose essential elements involve fraud or deception tend to be CIMTs.  In Omagah, for example, we held that conspiracy to obtain, possess, and use illegal immigration documents is a CIMT because it involves intentional deceit. 288 F.3d at 261-62.  We stated, "Crimes including dishonesty or lying as an essential element involve moral turpitude."  Id. at 260; see also Fuentes-Cruz v. Gonzales, 489 F.3d 724, 726 (5th Cir. 2007) (holding that transportation of individuals in a manner that is designed to conceal an individual from law enforcement agencies is a CIMT because it requires fraudulent intent); Balogun v. Ashcroft, 270 F.3d 274, 278-79 (5th Cir. 2001) (holding that forgery and fraudulent use of credit cards were CIMTs); Okabe v. I.N.S., 671 F.2d 863, 865 (5th Cir. 1982) (holding that offering a bribe is a CIMT because "a corrupt mind is an essential

5

element of the offense"). Moreover, the Supreme Court has stated that "fraud has consistently been regarded as such a contaminating component in any crime that American courts have, without exception, included such crimes within the scope of moral turpitude." Jordan v. DeGeorge, 341 U.S. 223, 229 (1951) (holding that the offense of evading liquor taxes is a CIMT).

Hyder contends that his crime does not fall within the above understanding of CIMT. He maintains that his crime was very minor, because it involved no distinct victim, affected only the state of Texas, and involved only a sentence of probation. He also argues that he did not have a "vicious motive" or "corrupt mind" when he obtained a driver's license using a social security card that a family member had obtained for him. He argues that the he did not personally commit "fraud," because his family member actually obtained the card. He also notes that the immigration judge described him as "a decent and honorable individual who was unfortunately led by others he respected to commit the above mentioned offense," and asserts that such an evaluation is inconsistent with a finding that he was not of good character.

Hyder's arguments are unpersuasive. In determining whether an offense is a CIMT, "[w]e concentrate on the 'inherent nature of the crime, as defined in the statute concerned, rather than the circumstances surrounding the particular transgression.'" Omagah, 288 F.3d at 260 (quoting Okoro v. I.N.S., 125 F.3d 920, 926 (5th Cir. 1982)). Hyder's offense, as defined in the statute, required that he "willfully, knowingly, and with intent to deceive," used a social security account number that had been assigned on the basis of false information. 42 U.S.C. § 408(a)(7)(A). The particular circumstances surrounding his conviction, such as the light sentence and his possible lack of a "vicious motive," are not relevant to our analysis. Also, it is immaterial that it was Hyder's family member who obtained the card, because Hyder himself was convicted of using it "with intent to deceive." Moreover, the fact that the government was the only victim does not

negate a finding that the offense is a CIMT; in Omagah, for example, we held that conspiracy to possess illegal immigration documents with intent to use them, an offense whose only victim is the government, is a CIMT. 288 F.3d at 261. We noted in that case that "almost all other courts have held that intentionally deceiving the government involves moral turpitude." Id. at 262. Hyder was convicted of a crime that involves dishonesty as an essential element. As our precedents make clear, such a crime falls well within this circuit's understanding of the definition of CIMT.

C. The Ninth Circuit's decision in Beltran-Tirado v. I.N.S.

Next, we consider Hyder's argument that we should specifically exempt the offense of misuse of social security numbers from CIMT status, as the Ninth Circuit did in Beltran-Tirado v. I.N.S., 213 F.3d 1179 (9th Cir. 2000). In Beltran-Tirado, Beltran was convicted of falsely representing a social security number in violation of 42 U.S.C. § 408(g)(2), now recodified at 42 U.S.C. § 408(a)(7)(B). Id. at 1182. After the I.N.S. moved to deport her in 1993, Beltran applied for permanent resident status under the "registry" statute, 8 U.S.C. § 1259,[3] but the immigration judge denied her application because it found that her prior offense was a CIMT that precluded her from meeting the statutory requirement of good character. Beltran-Tirado, 213 F.3d at 1183. The Ninth Circuit disagreed, holding that the use of another's social security card to work and establish credit in the United States, as Beltran had done, did not constitute a CIMT. Id. at 1184. The court relied heavily on the legislative history of 42

_____

[3] The "registry" statute provides that a record of lawful admission for permanent residence may be made for an alien if he

   (a) entered the United States prior to January 1, 1972;
   (b) has had his residence in the United States continuously since such entry;
   (c) is a person of good moral character; and
   (d) is not ineligible to citizenship and is not deportable under section 1227(a)(4)(B) of this title.

8 U.S.C. § 1259.

U.S.C. § 408(d), now recodified at § 408(e), which was added by amendment in 1990.  Id. at 1183.  That section provides that aliens who have been granted permanent resident status under amnesty or registry statutes are exempted from prosecution for certain past misuses of false social security numbers.  42 U.S.C. § 408(e); see Beltran-Tirado, 213 F.3d at 1183.  As the Ninth Circuit noted, Congress's conference committee report states,

> The Conferees intend that this exemption apply only to those individuals who use a false social security number to engage in otherwise lawful conduct . . . The Conferees believe that individuals who are provided exemption from prosecution under this proposal should not be considered to have exhibited moral turpitude with respect to the exempted acts for purposes of determinations made by the Immigration and Naturalization Service.

Id. (quoting H.R. REP. NO. 101-964, at 948 (1990) (Conf. Rep.), as reprinted in 1990 U.S.C.C.A.N. 2374, 2653).  Although the Ninth Circuit recognized that § 408(e) did not directly apply to Beltran, it applied the conference committee's rationale to find that Beltran's crimes were not CIMTs.  213 F.3d at 1183-84.

We decline to follow Beltran-Tirado in exempting social security number misuse from CIMT status.  As a preliminary matter, we note that Beltran-Tirado is not binding precedent in this circuit.  Moreover, in Beltran-Tirado, the Ninth Circuit appears to have expanded a narrow exemption beyond what Congress intended.  The statutory amendment and legislative history on which the Ninth Circuit relied apply specifically to aliens who have already been granted lawful permanent resident status under the amnesty or registry statutes.  42 U.S.C. § 408(e).  In addition, the amendment applies only to future criminal prosecutions.  Id.  The mere fact that Congress chose to exempt a certain class of aliens from prosecution for certain acts does not necessarily mean that those acts do not involve moral turpitude in other contexts.  Hyder is not within the class of aliens described in § 408(e).  He is not a permanent resident; rather, he is attempting to establish good character for purposes of cancellation of removal.

8

Moreover, to follow the Ninth Circuit's reasoning would require us to ignore our existing precedents, which establish that crimes involving intentional deception as an essential element are generally CIMTs.

## IV. CONCLUSION

We hold that misuse of a social security number in violation of 42 U.S.C. § 408(a)(7)(A) falls within this circuit's understanding of the definition of CIMT. Accordingly, the petition for review is DENIED.