# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

October 31, 2017

Lyle W. Cayce
Clerk

————

No. 15-60639

————

LEONARDO VILLEGAS-SARABIA, also known as Leonardo Villegas, Jr.,

> Petitioner

v.

JEFFERSON B. SESSIONS, III, U. S. ATTORNEY GENERAL,

> Respondent

———————————

Petition for Review of an Order of the
Board of Immigration Appeals

———————————

Consolidated with

———————

No. 15-50993

———————

LEONARDO VILLEGAS-SARABIA; LEONARDO VILLEGAS, JR.,

> Petitioners - Appellees

v.

ELAINE C. DUKE, ACTING SECRETARY, DEPARTMENT OF
HOMELAND SECURITY; ENRIQUE LUCERO, Field Office Director for
Immigration and Customs Enforcement; LEON RODRIGUEZ, Director,
United States Citizenship and Immigration Services; MARIO ORTIZ, San
Antonio District Director for United States Citizenship and Immigration
Services; REYNALDO CASTRO, Warden, South Texas Detention Center,

> Respondents - Appellants

No. 15-60639 c/w 15-50993

———————————

Appeal from the United States District Court
for the Western District of Texas

———————————

Before WIENER, HIGGINSON, and COSTA, Circuit Judges.

WIENER, Circuit Judge.

In the first of the cases consolidated in this appeal, Petitioners-Appellees Leonardo Villegas-Sarabia ("Villegas-Sarabia") and his father, Leonardo Villegas, Jr. ("Villegas"), seek review of the order of the Board of Immigration Appeals ("BIA") holding that Villegas-Sarabia, a Mexican citizen, is inadmissible to the United States and ineligible to adjust his citizenship status because his conviction for misprision of a felony is a crime involving moral turpitude. In the second case, the government appeals two aspects of the district court's decision: (1) that the differing physical presence requirements for unmarried U.S.-citizen mothers and such fathers in 8 U.S.C. §§ 1401 and 1409(c) violates equal protection and (2) that the remedy of the constitutional violation is extending citizenship to Villegas-Sarabia under 8 U.S.C. § 1409(c). We affirm the BIA's order in the first case and reverse the district court's judgment granting citizenship in the second case.

## I. FACTS & PROCEEDINGS

### A.    Factual Background

The facts of this case are not disputed by the parties. Leonardo Villegas-Sarabia was born in Mexico on March 16, 1974. At the time of his birth, his parents were not married, but Villegas, his father, was a United States citizen, who lived in the United States from the time he was born in 1955 through 1960, and again from 1965 to the present. In 1974, when Villegas-Sarabia was

2

No. 15-60639 c/w 15-50993

born, Villegas was 18 years old and had only been present in the United States for four years after he reached 14 years of age.[1] At the time of Villegas-Sarabia's birth, his mother was a citizen of Mexico.

Villegas-Sarabia's parents married when he was 13 years old. He has lived in the United States continuously since he was a few months old, and in July 1985, he became a lawful permanent resident of the United States.

In November 2011, Villegas-Sarabia was indicted for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922. He pleaded guilty in June 2012 and was sentenced to a thirty-month term of imprisonment in June 2013. Between his plea and his sentencing, Villegas-Sarabia applied for citizenship, claiming that he was a United States citizen by virtue of his father's citizenship. At the time of Villegas-Sarabia's birth, his citizenship was governed by the 1970 version of 8 U.S.C. § 1401(a)(7), which granted U.S. citizenship to:

> a person born outside the geographical limits of the United States and its outlying possessions of parents one of whom is an alien, and the other a citizen of the United States, who, prior to the birth of such person, was physically present in the United States or its outlying possessions for a period or periods totaling not less than ten years, at least five of which were after attaining the age of fourteen years.[2]

This provision applied expressly to married parents, but it was made applicable to unmarried parents under § 1409(a).[3] Significant to this case, § 1409(c) granted an exception to unmarried mothers:

---

[1] At the time of Villegas-Sarabia's birth, he would only have qualified for derivative citizenship if his father had lived in the United States for a total of ten years, and at least five years after reaching the age of 14. *See* 8 U.S.C. § 1401(a)(7) (1970).

[2] 8 U.S.C. § 1401(a)(7) (1970). The relevant provisions of the 1970 statute were originally codified in 1958. *See* 8 U.S.C. § 1409 (1958).

[3] 8 U.S.C. § 1409(a) (1970).

3

No. 15-60639 c/w 15-50993

> [N]otwithstanding the provision of subsection (a) of this section, a person born, on or after the effective date of this chapter, outside the United States and out of wedlock shall be held to have acquired at birth the nationality status of his mother, if the mother had the nationality of the United States at the time of such person's birth, and if the mother had previously been physically present in the United States . . . for a continuous period of one year.[4]

Applying these statutes, the United States Citizenship and Immigration Services denied Villegas-Sarabia's citizenship application, after determining that his father did not satisfy the residency requirements under § 1401(a)(7).

B.    Immigration Proceedings

In January 2015, the Department of Homeland Security initiated removal proceedings based on Villegas-Sarabia's firearms conviction. In his appearance before the immigration judge ("IJ"), Villegas-Sarabia conceded that he was admitted to the United States as the child of a citizen and that he had been convicted of illegal possession of a firearm, but he denied that he was an alien or that he was subject to removal.[5] Villegas-Sarabia argued that, because § 1409(c)'s discriminatory one-year exception covered only unmarried U.S.-citizen *mothers* it violated equal protection. He insisted that, under a constitutional reading of the statute, he was entitled to derivative citizenship.

In April 2015, the IJ determined that Villegas-Sarabia was not a citizen and sustained the removal charge. Villegas-Sarabia responded that he would seek an adjustment of status. The IJ held that Villegas-Sarabia's conviction for misprision of a felony was a crime involving moral turpitude ("CIMT"), making him inadmissible to the United States and ineligible for adjustment of his

---

[4] 8 U.S.C. § 1409(c).

[5] During the hearing before the immigration judge, the Department of Homeland Security submitted evidence of Villegas-Sarabia's firearm conviction and a 1997 judgment of conviction for misprision of a felony.

status.[6] The IJ explained further that Villegas-Sarabia could only adjust his immigration status if he could obtain a waiver of inadmissibility pursuant to 8 U.S.C. § 1182(h). Villegas-Sarabia's firearm conviction was an aggravated felony, however, statutorily barring him from seeking such a waiver. The IJ pretermitted Villegas-Sarabia's application for an adjustment of status, holding that he had committed a CIMT and therefore could not attempt to adjust his immigration status without a waiver. But Villegas-Sarabia's aggravated felony conviction barred him from seeking such a waiver.[7]

Villegas-Sarabia appealed the IJ's decision to the BIA, challenging the constitutionality of the disparate sex-based residency requirements of §§ 1401 and 1409(c). He argued in the alternative that, because misprision of a felony is not a CIMT, he is not required to obtain a waiver of inadmissibility to adjust his immigration status. In August 2015, a three-member panel of the BIA dismissed Villegas-Sarabia's appeal, holding that he was not a citizen under the statutes that were in place at the time of his birth and that the BIA lacked jurisdiction to address his constitutional challenge. The BIA also affirmed the IJ's holding that misprision of a felony is a CIMT. Villegas-Sarabia now seeks our review of the BIA's order holding that misprision of a felony is a CIMT.

---

[6] The IJ determined that misprision of a felony was indivisible, because the criminal statute did not list potential offenses in the alternative. Consequently, the IJ applied the categorical approach, which dictates that a court should evaluate the statutory definition rather than the facts underlying a conviction when determining if the conviction qualifies as a particular generic offense—such as a crime involving moral turpitude. *See United States v. Carrasco-Tercero*, 745 F.3d 192, 195 (5th Cir. 2014).

[7] The IJ explained that if applicants have been convicted of a CIMT, they are inadmissible to the United States. Even if an applicant is inadmissible, and thus ineligible to adjust his status, he can seek a discretionary waiver of inadmissibility under 8 U.S.C. § 1182(h). However, 8 U.S.C. § 1182(h)(2) provides that "No waiver shall be granted under this subsection in the case of an alien who has previously been admitted to the United States . . . if . . . since the date of such admission the alien has been convicted of an aggravated felony . . ." 8 U.S.C. § 1182.

No. 15-60639 c/w 15-50993

C.    District Court Proceedings

In February 2015, Villegas and Villegas-Sarabia filed a joint complaint and habeas corpus petition, claiming that Villegas-Sarabia is a United States citizen and therefore not subject to detention and removal.[8] They also sought a declaration that the disparate requirements of 8 U.S.C. §§ 1401 and 1409 are unconstitutional. The government filed a motion to dismiss in response to which the district court applied a heightened level of scrutiny and held that "the different physical presence requirements [in §§ 1401 and 1409] violate the Fifth Amendment's guarantee of equal protection." To remedy this constitutional violation, the district court extended § 1409(c)'s one-year continuous presence requirement applicable to unmarried U.S.-citizen *mothers* to unmarried U.S.-citizen *fathers*, then held Villegas-Sarabia to be an United States citizen.[9]

The government timely appealed and advanced two contentions: The district court erred (1) in holding that the distinction between unmarried mothers and unmarried fathers violated equal protection, and (2) in extending the one-year continuous residency requirement to unmarried fathers.

II. DISCUSSION

These consolidated appeals seek review of the BIA's order and the district court's ruling on the habeas petition. We address each in turn.

---

[8] Villegas-Sarabia later amended his pleading to dismiss his father from the habeas petition. Villegas-Sarabia and his father filed a new lawsuit, alleging the same equal protection theories, but seeking relief beyond the habeas petition. The district court later consolidated these cases.

[9] The court explained that this decision did not grant Villegas-Sarabia new rights, but merely confirmed his pre-existing citizenship. *Villegas-Sarabia v. Johnson*, 123 F. Supp. 3d 870, 895 (W.D. Tex. 2015).

No. 15-60639 c/w 15-50993

A.    BIA Order

Villegas-Sarabia contends that the BIA erred in ruling that misprision of a felony is a CIMT, so that he should not be required to seek a waiver of inadmissibility to adjust his status pursuant to 8 U.S.C. § 1182(h). The government urges this court to defer to the BIA's reasonable decision that misprision of a felony is a CIMT.

i.    Standard of Review

"When considering a petition for review, this court has the authority to review only the BIA's decision, not the IJ's decision, unless the IJ's decision has some impact on the BIA's decision."[10] If the BIA adopts the findings and conclusions of the IJ, this court may review the IJ's decision.[11] Here, the BIA affirmed the IJ's findings and conclusions, so we may review both decisions.

We review the BIA's legal conclusions de novo but give "considerable deference to the BIA's interpretation of the legislative scheme."[12]  In appeals addressing whether a particular conviction is a CIMT, we give "*Chevron* deference to the BIA's interpretation of the term 'moral turpitude' and its guidance on the general categories of offenses which constitute CIMTs;" however, we review de novo the decisions of the BIA addressing whether a particular crime is a CIMT.[13]

ii.    Subject-Matter Jurisdiction

Pursuant to 8 U.S.C. § 1252, this court lacks jurisdiction to review "any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in § 1182(a)(2) or 1227(a)(2)(A)(iii), (B),

---

[10] *Wang v. Holder*, 569 F.3d 531, 536 (5th Cir. 2009) (citing *Mikhael v. INS*, 115 F.3d 299, 302 (5th Cir. 1997)).

[11] *Id.* (citing *Efe v. Ashcroft*, 293 F.3d 899, 903 (5th Cir. 2002)).

[12] *Mercado v. Lynch,* 823 F.3d 276, 278 (5th Cir. 2016).

[13] *Esparza-Rodriguez v. Holder*, 699 F.3d 821, 823 (5th Cir. 2012).

(C), or (D) of this title, or any offense covered by § 1227(a)(2)(A)(ii) of this title."[14] However, this court retains jurisdiction to review colorable questions of law and constitutional claims under 8 U.S.C. § 1252(a)(2)(D). Villegas-Sarabia has raised a colorable question of law, so we have jurisdiction.[15]

### iii.   Analysis

#### 1.   Crimes Involving Moral Turpitude

This court uses a categorical approach to determine whether a particular crime meets the BIA's definition of a CIMT.[16] Under such an approach, this court "focuses on the inherent nature of the crime, as defined in the statute . . . rather than the circumstances surrounding the particular transgression."[17] "When applying the categorical approach, the statute must be read as the minimum criminal conduct necessary to sustain a conviction under the statute."[18] Thus, for Villegas-Sarabia to have committed a CIMT, the minimum conduct criminalized under 8 U.S.C. § 4 must constitute moral turpitude.[19]

The BIA, through its administrative decisions, has crafted the following definition of "moral turpitude":

> Moral turpitude refers generally to conduct that shocks the public conscience as being inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general. Moral turpitude has been

---

[14] 8 U.S.C. § 1252. 8 U.S.C. § 1227(a)(2)(C) provides that "[a]ny alien who at any time after admission is convicted under any law of . . . possessing . . . a firearm or destructive device (as defined in section 921(a) of Title 18) in violation of any law is deportable."

[15] 8 U.S.C. § 1252(a)(2)(D); *see Orosco v. Holder*, 396 F. App'x 50, 52 (5th Cir. 2010).

[16] *Amouzadeh v. Winfrey*, 467 F.3d 451, 455 (5th Cir. 2006); *see Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016).

[17] *Amouzadeh*, 467 F.3d at 455 (internal quotation marks omitted).

[18] *Rodriguez–Castro v. Gonzales*, 427 F.3d 316, 320 (5th Cir. 2005) (internal quotation marks omitted).

[19] *See Amouzadeh*, 467 F.3d at 455. If a statute is divisible, the court will apply a modified categorical approach. As 8 U.S.C. § 4 is not divisible, the modified categorical approach is not applicable in this case.

defined as an act which is per se morally reprehensible and intrinsically wrong, or *malum in se*, so it is the nature of the act itself and not the statutory prohibition of it which renders a crime one of moral turpitude. Among the tests to determine if a crime involves moral turpitude is whether the act is accompanied by a vicious motive or a corrupt mind.[20]

We have further explained that if a crime's essential element "involves fraud or deception,"[21] or "include[s] dishonesty or lying,"[22] it is a CIMT.[23]

### 2. Misprision of a Felony

The determinative question we must answer is whether Villegas-Sarabia's conviction for misprision of a felony under 18 U.S.C. § 4 is a CIMT. The misprision of felony statute provides:

> Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined under this title or imprisoned not more than three years, or both.[24]

There is no binding precedent of this circuit establishing whether misprision of a felony is a CIMT. Under our case law, however, deceit is an essential element of misprision of a felony, and "this [c]ourt has repeatedly held that crimes including an element of intentional deception are crimes involving moral turpitude."[25]

---

[20] *Hyder v. Keisler,* 506 F.3d 388, 391 (5th Cir. 2007) (internal quotation marks omitted); *see also Matter of Sejas*, 24 I. & N. Dec. 236, 237 (BIA 2007) ("Generally, a crime involves moral turpitude if it is inherently base, vile, or depraved, and contrary to accepted rules of morality and the duties owed between persons or to society in general.").

[21] *Hyder*, 506 F.3d at 391.

[22] *Omagah v. Ashcroft*, 288 F.3d 254, 260 (5th Cir. 2002).

[23] *Hyder*, 506 F.3d at 391; *Omagah*, 288 F.3d at 260.

[24] 18 U.S.C. § 4.

[25] *Fuentes-Cruz v. Gonzales,* 489 F.3d 724 (5th Cir. 2007); s*ee Patel v. Mukasey*, 526 F.3d 800 (5th Cir. 2008); *see also Omagah,* 288 F.3d at 260 (conspiracy to obtain, possess and use illegal immigration documents is a crime involving moral turpitude); *Pichardo v. INS,*

Misprision of felony consists of the following elements: "(1) knowledge that a felony was committed; (2) failure to notify the authorities of the felony; and (3) an affirmative step to conceal the felony."[26] "Mere failure to make known does not suffice."[27] In *Patel v. Mukasey*, a petitioner sought our review of a BIA decision which held that misprision of a felony was an aggravated felony under 8 U.S.C. § 1101(a)(43)(M)(i).[28] To qualify as an aggravated felony under § 1101, the offense must "necessarily entail[] fraud or deceit" and involve a loss of greater than $10,000.[29] We concluded that the final element of misprision of a felony—that the defendant must commit some affirmative act to conceal the felony—"necessarily entails the act of intentionally giving a false impression, *i.e.,* the false impression that the earlier felony never occurred."[30] We explained that, because misprision of a felony requires assertive dishonest conduct, it necessarily requires an intentional act of deceit.[31] Viewing *Patel* in conjunction with this court's repeated holdings that "crimes including an element of intentional deception are crimes involving moral turpitude," necessarily leads to the conclusion that misprision of a felony is a CIMT.[32]

Two panels of this court, (in unpublished and thus non-precedential opinions), have affirmed BIA decisions that reached the same conclusion. The

---

104 F.3d 756, 760 (5th Cir. 1997) (aggravated assault is a crime involving moral turpitude); *Okabe v. INS,* 671 F.2d 863, 865 (5th Cir. 1982) (bribery is a crime involving moral turpitude).

[26] *Patel*, 526 F.3d at 803; *United States v. Davila*, 698 F.2d 715, 717 (5th Cir. 1983) ("Violation of the misprision statute additionally requires some positive act designed to conceal from authorities the fact that a felony has been committed.").

[27] *Patel*, 526 F.3d at 803 (quoting *United States v. Adams,* 961 F.2d 505, 508–09 (5th Cir. 1992)) (internal citations omitted).

[28] *Patel*, 526 F.3d at 801–02. While *Patel* addressed the question whether misprision of a felony was an aggravated felony—rather than a CIMT—the Court's analysis of whether misprision involves fraud or deceit is germane to the inquiry in this case.

[29] *Id*. at 804.

[30] *Id*. at 803.

[31] *Id*. (citing *Itani v. Ashcroft*, 298 F.3d 1213, 1216 (11th Cir. 2002)).

[32] *See, e.g., Patel*, 526 F.3d 800; *Fuentes-Cruz v. Gonzales,* 489 F.3d 724.

panel in *Ahmad v. Holder* held that the BIA did not err in holding that a defendant who was convicted of misprision of a felony had committed a CIMT.[33] Similarly, the panel in *Aguilar-Cortez v. Gonzales* held that the BIA did not err in holding that the petitioner was "ineligible for adjustment of status because his conviction for misprision of felony was a conviction for a crime of moral turpitude."[34] Although this court has not yet held bindingly that misprision of a felony is a CIMT, our case law lends support to the BIA's determination to that effect in this case.

The question whether misprision of a felony is categorically a CIMT, however, has led to a split among other circuits.[35] In *Lugo v. Holder*, the Second Circuit provided a brief history of the existing circuit split.[36] The petitioner in *Lugo* sought review of a BIA decision holding that misprision of a felony is a CIMT.[37] The Second Circuit declined to rule on the issue, concluding instead that the question would "best [be] addressed in the first instance by the Board in a precedential opinion."[38] The circuit court explained:

> Originally, in [1966], the Board held that misprision of felony was not a CIMT. The Eleventh Circuit then adopted the contrary rule in *Itani v. Ashcroft,* 298 F.3d 1213, 1216 (11th Cir. 2002), holding that misprision of felony *is* a categorical CIMT. The Board switched to the Eleventh Circuit's view in *Matter of Robles–Urrea,* but the Board's decision in that case was reversed by the Ninth Circuit. *Robles–Urrea v. Holder,* 678 F.3d 702, 711 (9th Cir. 2012) (holding that misprision of felony is not a CIMT). We are thus left to wonder whether, going forward, the Board wishes to adopt the Ninth Circuit's rule or the Eleventh Circuit's. We believe it is

---

[33] *Ahmad v. Holder*, 451 F. App'x 438, 440 (5th Cir. 2011).

[34] *Aguilar-Cortez v. Gonzales*, 186 F. App'x 515, 515–16 (5th Cir. 2006).

[35] *See Lugo v. Holder*, 783 F.3d 119, 120–21 (2d Cir. 2015).

[36] *Id.*

[37] *Id.* at 120.

[38] *Id.*

desirable for the Board to clarify this matter in a published opinion.[39]

In an attempt to clarify this issue, the Second Circuit remanded the case for further proceedings, but the BIA has yet to issue a precedential ruling in response.[40]

Villegas-Sarabia urges us to follow the Ninth Circuit's holding in *Robles-Urrea v. Holder*, that misprision of a felony is not a CIMT. In reaching that result, the Ninth Circuit explained that an offense does not involve moral turpitude merely because it "contravenes societal duties."[41] Instead, the court returned to the original definition and explained that crimes of moral turpitude must be "inherently base, vile, or depraved;" and ruled that the BIA had not adequately discussed how misprision of a felony meets these requirements.[42] The appeals court stated that, because "the misprision of a felony statute will encompass conduct that is not morally turpitudinous . . . misprision of a felony is not categorically a crime involving moral turpitude."[43]

---

[39] *Id.* at 120–21; c*f. Ortiz–Franco v. Holder,* 782 F.3d 81, 93 (2d Cir. 2015) (Lohier, J., concurring) (noting an analogous circuit split, and stating "[t]his is not a sustainable way to administer uniform justice in the area of immigration").

[40] *Lugo*, 783 F.3d at 120–21.

[41] *Robles-Urrea v. Holder,* 678 F.3d 702, 705 (9th Cir. 2012) (internal quotation marks omitted).

[42] *Id.* at 708.

[43] *Id.* at 711. In *Robles-Urrea*, the Ninth Circuit stated that misprision is different than other CIMTs because it "requires not a specific intent to conceal or obstruct justice, but only knowledge of the felony." *Id.* at 710. That court, however, also recognized that knowledge alone is insufficient, as misprision requires "'both knowledge of a crime and some affirmative act of concealment or participation.'" *Id.* at 709 (quoting *Branzburg v. Hayes*, 408 U.S. 665, 696 n.36 (1972)). Even thought that court acknowledged that this definition fails to include an additional element, *viz.*, that the crime "involve some level of depravity or baseness," *Branzburg* conclusively establishes that misprision requires knowledge of a felony and an affirmative act to conceal. This two-part definition accords with the elements of misprision we set out in *Patel. See Patel*, 526 F.3d at 803.

No. 15-60639 c/w 15-50993

The government responds here that *Robles-Urrea* is unpersuasive because it failed to consider fully the BIA's reasoning that misprision involves dishonest activity and that dishonest activity is what makes an offense a CIMT. The government urges this court to adopt the Eleventh Circuit's rule in *Itani*, that misprision of a felony under 8 U.S.C. § 4 is a CIMT.[44]

The petitioner in *Itani* sought review of a BIA order holding that misprision of a felony is a CIMT.[45] Relying on this court's precedent, the Eleventh Circuit explained that moral turpitude involves:

> An act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow men, or to society in general, contrary to the accepted and customary rule of right and duty between man and man. Generally, a crime involving dishonesty or false statement is considered to be one involving moral turpitude.[46]

Based on this reasoning, the Eleventh Circuit ruled that, because misprision of a felony requires an affirmative act to conceal a crime, misprision of a felony is a CIMT.[47]

Our court has not expressly adopted *Itani*, but some of our panels have cited it favorably. We explained in *Patel* that if "an affirmative step to conceal the felony," is an element of a crime, that crime "necessarily entails fraud or deceit."[48] Citing *Itani*, the panel in *Patel* reasoned that such conduct "necessarily entails the act of intentionally giving a false impression" and thus requires deceitful conduct.[49]

---

[44] *Itani*, 298 F.3d at 1216.
[45] *Id.* at 1215.
[46] *Id.* (quoting *United States v. Gloria*, 494 F.2d 477, 481 (5th Cir. 1974)).
[47] *Id.* at 1216.
[48] *Patel*, 526 F.3d at 803.
[49] *Id.* (citing *Itani,* 298 F.3d at 1216).

13

No. 15-60639 c/w 15-50993

Another panel of this court cited *Itani* in support of its holding that making a false statement to the Federal Aviation Administration was a CIMT.[50] And yet another panel of this court relied on *Itani's* reasoning that deceit is a "behavior that runs contrary to accepted societal duties and involves dishonest or fraudulent activity'" as "strong support" for holding that "crimes involving the intentional concealment of illegal drug activity are intrinsically wrong and, therefore, turpitudinous."[51]

We are satisfied that, in light of this court's favorable treatment of *Itani,* as well as its decisions in *Patel* and *Fuentes*, the BIA did not err in holding that misprision of a felony is a CIMT. This court's precedent firmly establishes that "[c]rimes including dishonesty or lying as an essential element involve moral turpitude."[52] Misprision of a felony "necessarily entails deceit."[53] We therefore affirm the BIA's order and deny Villegas-Sarabia's petition for review.

B. District Court Decision

i. Standard of Review

When considering a district court's ruling on a request for habeas relief, this court reviews that court's findings of fact for clear error and its conclusions of law de novo.[54] We review claims of constitutional violations, including equal protection under the Fifth Amendment, de novo.[55]

---

[50] *Martinez-Castelan v. Gonzales*, 188 F. App'x 246, 247 (5th Cir. 2006) ("Crimes including dishonesty or lying as an essential element involve moral turpitude."); *see Padilla v. Gonzales,* 397 F.3d 1016, 1020 (7th Cir. 2005); *Itani,* 298 F.3d at 1215.

[51] *Smalley v. Ashcroft*, 354 F.3d 332, 339 (5th Cir. 2003) (quoting *Itani,* 298 F.3d at 1216). As Villegas-Sarabia argues, *Smalley* is not controlling, as it involved the intentional concealment of illegal drug activity. Nonetheless, it demonstrates the favorable treatment *Itani* has received from this court.

[52] *Hyder*, 506 F.3d at 391 (quoting *Omagah,* 288 F.3d at 260); *Fuentes–Cruz,* 489 F.3d at 726.

[53] *Patel*, 526 F.3d at 803.

[54] *Richards v. Thaler*, 710 F.3d 573, 575 (5th Cir. 2013).

[55] *See De Zavala v. Ashcroft*, 385 F.3d 879, 883 (5th Cir. 2004).

ii. Analysis

First, although the government argued in its brief that the district court erred in holding that the disparate residency requirements applicable to unwed U.S.-citizen mothers vis-à-vis fathers violated equal protection, it now acknowledges that this issue is controlled by the Supreme Court's recent decision in *Sessions v. Morales-Santana.*[56] In that case, Morales-Santana claimed United States citizenship based on the citizenship of his father, José Morales.[57] Morales is a United States citizen who was unable to satisfy § 1401(a)(7)'s requirement that, at the time of his son's birth, he must have resided in the United States for five years after reaching the age of 14.[58] An IJ held that José Morales's son, Morales-Santana, was therefore an alien and ordered his deportation.[59] Morales-Santana argued that the disparate residency requirements for mothers and fathers under §§ 1401 and 1409 violated equal protection so that, under a constitutional reading of the statutes, he derived citizenship from his father at the time of his birth.[60]

Addressing the equal protection challenge, the Court reasoned that the exception provided to mothers under § 1409(c) was a sex-based differential, and therefore "must substantially serve an important governmental interest" to justify its discrimination.[61] The Court concluded that the government had failed to demonstrate an "exceedingly persuasive justification for § 1409(a) and

---

[56] *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1686 (2017).

[57] *Id.* at 1687.

[58] *Id.* In 1986, Congress reduced the residency requirement to five years, two of which must occur after the parent reaches age 14. *Morales-Santana*, 137 S. Ct. at 1687 (citing § 1401(g). However, as both Villegas-Sarabia and Morales-Santana were born before 1986, their citizenship is governed by the previous version of the statute.

[59] *Id.* Like Villegas-Sarabia's in this case, Morales-Santana's deportation order was based on criminal activity.

[60] *Id.*

[61] *Id.* at 1690.

(c)'s gender-based and gender-biased disparity."[62] The Court therefore held that the exception provided to unwed U.S.-citizen mothers under 8 U.S.C. § 1409(c) violated the Fifth Amendment's requirement that all persons are entitled to equal protection under the law.[63] Applying the Court's holding to the instant case, we affirm this facet of the district court's decision.

The second issue that the government raises on appeal is whether the district court exceeded its constitutional and statutory authority when it rewrote § 1409(c) to extend the one-year residency exception to unwed fathers. This issue is also governed by *Morales-Santana*.[64]

After concluding that the statutory scheme in §§ 1401 and 1409 violated equal protection, the Court explained that, when a statute violates equal protection, the Court may remedy the deficiency "by withdrawal of benefits from the favored class as well as by extension of benefits to the excluded class."[65] The choice between withdrawal or extension, said the Court, must be guided by the legislative intent behind the statute.[66]

The Court next recognized that, generally, "extension, rather than nullification, is the proper course" when rectifying equal protection violations. But it went on to note that, in that case, "the discriminatory exception consists of favorable treatment for a discrete group."[67] Convinced that Congress established the residency requirements to ensure that unmarried parents had an adequate connection to the United States before their children were granted citizenship, the Court determined that expanding the one-year exception to

---

[62] *Id.* (internal citations and quotation marks omitted).

[63] *Id.*

[64] *Id.* at 1701.

[65] *Id.* (quoting *Heckler v. Mathews*, 465 U.S. 728, 740 (1984)).

[66] *Id.* at 1699.

[67] *Id.* (quoting *Califano v. Westcott*, 443 U.S. 76, 89 (1979)).

include unmarried fathers would undermine the legislative intent.[68] It therefore held that, prospectively, § 1401's general residency requirement should apply to children born to unwed U.S.-citizens, both mothers and fathers.[69]

Applying the rule in *Morales-Santana* to the instant case, the district court erred in extending the one-year exception provided in § 1409(c) to fathers. Instead, the general rule in § 1401 should apply to unwed U.S.-citizen parents—regardless of sex—until Congress addresses the issue.[70] We therefore reverse this aspect of the district court's decision.

During oral argument, counsel for Villegas-Sarabia contended that, under *Morales-Santana*, Villegas-Sarabia's citizenship is governed by the *current* version of 8 U.S.C. § 1401(g), which provides that a child born to an unwed U.S.-citizen father will receive derivative citizenship if his father has lived in the United States for five years, at least two of which were after he reached the age of fourteen.[71] The success of this argument hinges on the following portion of the Supreme Court's decision: "In the interim, as the Government suggests, § 1401(a)(7)'s now-five-year requirement should apply, prospectively, to children born to unwed U.S.-citizen mothers."[72] The government insists that this rule applies to children born after the date of that decision; Villegas-Santana contends that, now, any child whose U.S.-citizen

---

[68] *Id.*

[69] *Id.* at 1701.

[70] *Id.*

[71] 8 U.S.C. § 1401(g) (2012); *see also Morales-Santana*, 137 S. Ct. at 1701 ("In the interim, as the Government suggests, § 1401(a)(7)'s now-five-year requirement should apply, prospectively, to children born to unwed U.S.-citizen mothers.")).

[72] *Morales-Santana*, 137 S. Ct. at 1701. Under the current version of the statute, the residency requirements are codified under § 1401(g), rather than § 1401(a)(7). 8 U.S.C. § 1401 (g).

mother or father satisfies the new five-year rule qualifies for derivative citizenship as the proper interim solution until Congress remedies the equal protection violation created by § 1409(c).

Based on the record in this case, Villegas-Sarabia would be a citizen if his derivative citizenship were to be determined by the current residency requirements of § 1401. Villegas-Sarabia acknowledges that this is a different statutory requirement than the one which was in place at the time of his birth, but he nevertheless contends that applying the current rule retroactively would be the proper way to cure the constitutional deficiency until Congress addresses the issue. The government disagrees, maintaining that *Morales-Santana* invalidated the one-year exception provided only to mothers in § 1409(c), but did not otherwise modify the statutory regime.

Villegas-Sarabia is correct that the Court remanded *Morales-Santana* for further proceedings consistent with the opinion, but there is no indication that the Court intended to replace the ten-year rule in effect at the time of Morales-Santana's birth with the subsequently revised five-year rule.[73] First, the Court emphasized that it had two—but only two—options for remedying such a constitutional deficiency: (1) extend the one-year exception to mothers and fathers, or (2) eliminate the discriminatory benefit.[74] The Court cited substantial case law to support its decision that eliminating rather than extending the exception was the correct course to remedy the equal protection violation in that case.[75]

---

[73] *Morales-Santana*, 137 S. Ct. at 1687. ("Congress has since reduced the duration requirement to five years, two after age 14.").

[74] *Id.* at 1698–99.

[75] *See id.*

No. 15-60639 c/w 15-50993

Other than eliminating the discriminatory benefit to mothers, the Court did not rewrite the previous statutory regime or apply the "now-five-year" rule retroactively.[76]  Instead, the Court emphasized that its decision would affect future rights only.[77] Villegas-Sarabia's citizenship is therefore governed by the statutes in place at the time of his birth, which required an unwed U.S.-citizen father to live in the United States for ten years, at least five of which were after he reached 14 years of age, before he could pass derivative citizenship to his child. Because Villegas did not satisfy this requirement, Villegas-Sarabia cannot acquire derivative citizenship.[78] We therefore reverse this facet of the district court's decision.

### III. CONCLUSION

We affirm the BIA's ruling that misprision of a felony is a crime involving moral turpitude and its denial of Villegas-Sarabia's petition for review. Although the district court correctly held that the residency requirements of §§ 1401 and 1409 violate equal protection, we reverse its judgment that Villegas-Sarabia is a United States citizen under a constitutional reading of those statutes in light of the limited remedy the Supreme Court announced for that violation. We therefore affirm the BIA's determination that Villegas-Sarabia is not a United States citizen.[79]

---

[76] *Id*. at 1686, 1700 (explaining that this holding will impact rights "going forward" and the new rule will apply "prospectively.").

[77] *Id.*

[78] *See* 8 U.S.C. § 1401(a)(7)(1970).

[79] Respondents-Appellants motions to sever the petition for review from the appeal and for summary reversal of the judgment of the district court in appeal no. 15-50993 previously carried with the case are DENIED.