NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| MARCOS ANTONIO LOMELI, Petitioner, v. WILLIAM P. BARR, Attorney General, Respondent. | No. 17-72055<br>18-70757<br>18-71601<br><br>Agency No. A017-224-401<br><br>MEMORANDUM* |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted July 8, 2020
Seattle, Washington

Before: FERNANDEZ and NGUYEN, Circuit Judges, and BOLTON,** District
Judge.

Marcos Lomeli petitions for review of three decisions of the Board of

Immigration Appeals ("BIA")—two denying motions to reopen and one denying a

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Susan R. Bolton, United States District Judge for the
District of Arizona, sitting by designation.

motion for reconsideration.[1]  Lomeli argues that he is a United States citizen under *Sessions v. Morales-Santana*, 137 S. Ct. 1678 (2017).  We have jurisdiction under 8 U.S.C. § 1252, and we deny the consolidated petitions.

1.  Lomeli's two motions to reopen were time- and number-barred by statute.  *See* 8 U.S.C. § 1229a(c)(7)(A), (C)(i); 8 C.F.R. § 1003.2(c)(2) (providing that "a party may file only one motion to reopen deportation or exclusion proceedings" and that a motion to reopen "must be filed no later than 90 days after the date on which the final administrative decision was rendered").  The final administrative order issued on August 3, 2007 and the two motions to reopen— Lomeli's fifth and sixth such motions—were filed in 2017 and 2018.

But Lomeli may still ask the BIA to exercise its *sua sponte* authority to reopen his removal proceedings, *see Bonilla v. Lynch*, 840 F.3d 575, 585 (9th Cir. 2016), and he did so here.  We "[have] jurisdiction to review Board decisions denying *sua sponte* reopening for the limited purpose of reviewing the reasoning behind the decisions for legal or constitutional error."  *Id.* at 588.

In its order denying Lomeli's fifth motion to reopen, the BIA concluded that *Morales-Santana* did not affect Lomeli's citizenship claim.  The BIA denied Lomeli's sixth motion to reopen on the same ground.  Thus, under *Bonilla*, we

---

[1] The motion for reconsideration argued that Lomeli's removal order was constitutionally defective.  By not advancing that argument before this court, Lomeli has waived it.  *See Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999).

have jurisdiction to review the purely legal issue of whether the BIA correctly interpreted *Morales-Santana*.

2. In *Morales-Santana*, the Supreme Court held that the statutory provisions governing the derivative citizenship of a child born abroad to one U.S.-citizen parent and one non-U.S.-citizen parent, 8 U.S.C. §§ 1401(a)(7), 1409(a), and 1409(c) (1952), violated equal protection, 137 S. Ct. at 1698. Congress imposed a ten-year physical-presence requirement for most U.S.-citizen parents, *see* 8 U.S.C. §§ 1401(a)(7), 1409(a) (1952), in order to counteract the "foreign" influence a non-U.S.-citizen parent may impose on a child, 137 S. Ct. at 1692. But "[f]or unwed [U.S.-]citizen mothers, . . . there was no need for a prolonged residency prophylactic: The alien father, who might transmit foreign ways, was presumptively out of the picture." *Id.* Thus, unwed mothers—and they alone— were subject to a less burdensome one-year physical-presence requirement. 8 U.S.C. § 1409(c) (1952). Applying heightened scrutiny, the Court characterized the differing requirements as "stunningly anachronistic," 137 S. Ct. at 1693, with "no 'exceedingly persuasive' justification," *id.* at 1698.

As a remedy the Court declined to extend to unwed fathers the more lenient physical-presence rule of § 1409(c) that had applied only to unwed mothers. Instead, it applied the more burdensome ten-year physical-presence requirement of §§ 1401(a)(7) and 1409(a). *Id.* at 1698–1700. The Court described the "two

3

remedial alternatives" and acknowledged that "[o]rdinarily . . . 'extension, rather than nullification, is the proper course,'" *id.* (quoting *Califano v. Westcott*, 443 U.S. 76, 89 (1979)), but it chose nullification.

The Court explained that the choice between the two remedial outcomes was "governed by the legislature's intent, as revealed by the statute at hand." *Id.* at 1699. The Court concluded that "[p]ut to the choice, Congress . . . would have abrogated § 1409(c)'s exception, preferring preservation of the general rule [in §§ 1401(a)(7) and 1409(a)]." *Id.* To do otherwise would "render the special treatment Congress prescribed in § 1409(c) . . . the general rule, no longer an exception." *Id.* at 1701. The statutory framework "evidence[d] Congress' recognition of 'the importance of residence in this country as the talisman of dedicated attachment.'" *Id.* at 1700 (quoting *Rogers v. Bellei*, 401 U.S. 815, 834 (1971)); *see also Villegas-Sarabia v. Sessions*, 874 F.3d 871, 882 (5th Cir. 2017).

Contrary to Lomeli's argument, *Morales-Santana* does not extend a one-year physical-presence requirement to Lomeli's U.S.-citizen mother. Simply put, Lomeli fails to persuasively explain how the result can be different in his case.[2] To

---

[2] As Lomeli notes, one additional concern in *Morales-Santana*—that extending the one-year requirement to unwed fathers would pose a constitutional problem as between married and unmarried parents—does not exist in the same way here. But that one difference does not control; the Court extended the general rule because "all indicators"—including its recognition of "the importance of residence in this country as the talisman of dedicated attachment"—convinced it that Congress would have done the same. 137 S. Ct. at 1700.

4

the contrary, the Court's conclusion in *Morales-Santana* regarding Congress's intent applies equally here.

We also reject Lomeli's alternative argument that the *current* physical-presence requirement for derivative citizenship applies to Lomeli.[3] According to Lomeli, the Court's declaration that the "now-five-year requirement should apply, prospectively, to children born to unwed U.S.-citizen mothers," 137 S. Ct. at 1701, means that the requirement applies to all claims adjudicated after *Morales-Santana* issued. But this interpretation is contrary to both the plain language of *Morales-Santana* and the plain meaning of the word "prospectively." The five-year requirement applies prospectively to *children born* to unwed U.S.-citizen mothers, not to new (or in Lomeli's case, renewed) citizenship *claims*. To conclude otherwise would be to apply *Morales-Santana* retroactively by adjusting the citizenship status of those born prior to its issuance. *See Villegas-Sarabia*, 874 F.3d at 883–84. And it would also expressly contradict the statutory framework, which, as the *Morales-Santana* Court reaffirmed, provides that the current five-year requirement "affects only children born on or after November 14, 1986." *Morales-Santana*, 137 S. Ct. at 1687 n.3 (citing § 8(r), 102 Stat. 2619, §§ 12–13,

---

[3] Under the current rule, the physical-presence requirement is five years. 8 U.S.C. § 1401(g).

100 Stat. 3657).  Because Lomeli was born in 1955, the five-year requirement cannot apply.

**PETITIONS DENIED.**